UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Melisa C., | ) |
|     Plaintiff, | ) ) ) |
| v. | )    No. 18 CV 50270 )    Magistrate Judge Iain D. Johnston |
| Andrew Saul, Commissioner of Social Security, | ) ) ) |
|     Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**[1]

This is an appeal of a partially favorable administrative decision. In January 2014, plaintiff applied for disability benefits based on multiple ailments, including knee pain and swelling (she had several arthroscopies with total left knee replacement); degenerative disc disease; headaches allegedly occurring 3 to 5 times a day; obesity; breast cancer requiring a double mastectomy; temporomandibular disorder; carpal tunnel syndrome with trigger fingers in the right hand; and post-traumatic stress disorder ("PTSD"). Although it is not clear exactly when all these problems emerged, several of them originated long ago when plaintiff was in the Army for 18 months in the early 1980s. R. 1363. During that time, she suffered (or witnessed) some type of sexual trauma, which resulted in a later diagnosis of PTSD. R. 1368. She also injured her knee during basic training when she was pushed off a ladder. The carpal tunnel syndrome was diagnosed as early as 1991, according to some reports.

In December 2016, the ALJ issued an 18-page, 2-part decision. The ALJ found that plaintiff was disabled under the Grid rules as of her 50th birthday, which was July 22, 2014.

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

1

However, the ALJ rejected plaintiff's argument that she was disabled as of her alleged onset date, which was August 10, 2012. The ALJ concluded that plaintiff had the residual functional capacity ("RFC") during this time to do sedentary work. The ALJ included several RFC restrictions, including limiting plaintiff to only frequent handling, fingering, and feeling (for the hand problems) and limiting her to no loud noises (for the headaches). These RFC restrictions were provided by Dr. Gilberto Munoz, the expert who testified at the administrative hearing.

## DISCUSSION

This appeal is about plaintiff's condition during this discrete time period—namely, the roughly two-year period between the onset date and the date the ALJ found her disabled.

It is worth noting at the outset that the ALJ had to traverse a complex factual landscape. The record, at 2452 pages, is three to four times longer than the typical length seen by this Court in disability cases. The hearing and the ALJ's decision also were longer than average. Plaintiff's medical history spans of three decades with treatment by an array of providers. The ALJ was required to sort through and address many issues. However, as is often the case, on appeal, plaintiff's counsel has picked out a few relatively narrow issues to criticize. And even further narrowing the scope, plaintiff's arguments rely on only a handful of documents, consisting of just a few pages from the lengthy record. In short, plaintiff's counsel has the luxury of picking her battles and singling out the errors supposedly made by the ALJ while ignoring the rest of the ALJ's analysis. This can sometimes lead to a spotlight effect in which issues that were previously not viewed as major during the administrative proceedings are given greater prominence here. The Seventh Circuit has acknowledged this concern in various indirect ways over the years. *See, e.g.*, *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistences or contradictions, we give it a commonsensical

reading."); *McFadden v. Astrue*, 465 Fed. Appx. 557, 559 (7th Cir. 2012) ("an ALJ may not ignore entire lines of evidence contrary to the RFC determination, but she need not discuss every piece of evidence in the record").

With these considerations in mind, the Court turns to plaintiff's three primary arguments. Plaintiff argues that the ALJ cherrypicked evidence in several instances, played doctor, and ignored Dr. Chmell's opinion that plaintiff needs to elevate her leg. The Government responds issue by issue, but it also interweaves a broader argument throughout its brief. It is the simple but compelling argument that ALJ's decision was "entirely consistent" with the "largely uncontradicted" testimony of Dr. Munoz. Dkt. #13 at 3-4. The Government argues that, with the one exception of Dr. Chmell's opinion, neither plaintiff nor her counsel obtained (or pointed to) any medical opinion disputing Dr. Munoz's testimony. The Government asserts that this testimony, by itself, provides an adequate evidentiary foundation to affirm the ALJ's decision. After reviewing the briefs, the Court agrees that Dr. Munoz's testimony almost single-handedly undermines plaintiff's arguments. Despite the obvious stumbling block this testimony presents, plaintiff mostly ignores it. Aside from a few cursory references, plaintiff's briefs proceed as if no expert had been called at the hearing. This is a major weakness in her argument.

**I.      Cherrypicking.**

Plaintiff argues that the ALJ cherrypicked the record in three areas—hand limitations, headaches, and PTSD symptoms. As a prefatory point, the Court notes that plaintiff periodically claims that the ALJ "ignored" evidence. However, in most if not all of these instances, the ALJ did not completely ignore the evidence. What plaintiff is really arguing is that the ALJ did not give sufficient weight to the piece of evidence in question. But this is a difficult argument to prevail on because the Court is not generally permitted to second-guess the ALJ's weighing of

3

competing evidentiary claims. *See, e.g.*, *Johnson v. Berryhill*, Case No. 17-1696, at p.6 (7th Cir. Aug. 14, 2018) ("Resolving the conflicting evidence about such a close case, in which subjective pain is so critical, is a job for the ALJ in the first instance.").

**Hand Limitations.** Plaintiff devotes the most attention to this argument. Plaintiff was diagnosed with bilateral carpal tunnel syndrome, which affects both hands, and she also has trigger finger in several fingers in her right hand. At the hearing, she testified that she was right handed but used her left hand "for most everything" except writing. R. 62. She stated that she also had "numbness and tingling" in the left hand. R. 78.

Relying on Dr. Munoz's testimony, the ALJ found that plaintiff had some limitations in using her hands, but that these problems could be accounted for by a limitation to frequent handling, fingering and feeling. Plaintiff argues that the ALJ ignored substantial evidence in reaching this conclusion. The Court finds that this argument is not well developed, and confusing in places.

Although plaintiff claims that the ALJ ignored substantial evidence, plaintiff does not cite to any specific evidence the ALJ ignored. Plaintiff's only argument is that the ALJ failed to give sufficient weight to the fact that she needed to use a cane at times because of her knee problems and that using the cane tended to "exacerbate" her hand problems. Dkt. #9 at 5.

But plaintiff does little to develop this argument. In her opening brief, after stating the argument in the form described above, plaintiff offers only the following conclusory sentence:

> [The ALJ's] conclusion ignores substantial evidence documenting [plaintiff's] carpal tunnel syndromes and trigger finger precluding her from fine and gross manipulation. (Tr. 1743).

Dkt. #9 at 5-6. The Court was expecting that this sentence would be followed by a discussion of the "substantial evidence" the ALJ supposedly ignored, but there was no such discussion.

4

Instead, the brief goes on, in the next paragraph, to quote a few generic "cherrypicking" statements from Seventh Circuit cases. As a result, this Court had to double-back and look closer at the sentence quoted above to see what might have been overlooked, and yes, it turns out that there was a breadcrumb of sorts, a citation to a single page in the record—specifically page 1743.

It would have helped the Court, and would have made plaintiff's argument more persuasive, if plaintiff's counsel—rather than merely plopping down one lonely number at the end of the sentence—had stopped and described the document being cited, and then had explained how the statements in that document supported the specific legal arguments.

The Court will undertake that task now. Page 1743 is the second page of a two-page letter written by Jill Wirfs, a nurse practitioner, working at a VA outpatient clinic in Rockford. The letter is dated April 19, 2016. Ms. Wirfs describes some of plaintiff's medical conditions, starting with her high blood pressure. At the end of the letter, she describes the hand issues. The Court will quote the full paragraph, even though it perhaps contains more detail than is needed to understand plaintiff's argument:

> [Plaintiff] was originally diagnosed by her primary care in 1991 for having the symptoms of carpal tunnel syndrome due to her prolonged use of crutches and canes due to her service connected knee condition. In Jan 2013 she had an EMG for a pinched nerve in her neck at the Rockford Spine Center. During the test Dr. Walker noted "There is electro physiologic evidence of mild bilateral median neuropathies at the wrists". RSC relieved her pinched nerve but referred her back to me for the bilateral carpal tunnel syndrome. [Plaintiff] reported that Dr. Walker told her she probably has had CPS since 1991 due to the prolonged use of crutches and canes but that she now has permanent medial nerve damage from CPS and need[s] to consider surgery. We discussed her CPS and decided not to pursue surgical options due to other more pressing illnesses. On Oct 23, 201 [sic] during her exam I observed her second digit on her left hand lock around her cane and she had to physically unlock it from the cane. I believed she had trigger finger due to the use of her cane and referred her to VA Madison ORTHO. On Dec 23, 2013, she was seen in ORTHO. She was diagnosed with trigger finger and was given an injection to relieve the pain. She was advised to stop using the cane even if that increased to [sic] pain in her knees. With the injection and not using the cane she did get temporary relief from hand pain but experienced more knee pain. Currently she is

5

using her cane and her trigger finger has returned. **I believed her CPS and Trigger finger are both secondary to the service connected knee condition due to prolonged use of crutches and canes.**

R. 1743 (emphasis in original).

The Court is not persuaded that this one piece of evidence provides a sufficient basis to remand this case. First, the letter was written in April 2016, which was a year and 9 months after the date the ALJ found plaintiff disabled under the Grid rules. Also, the letter refers to plaintiff's "current" condition and states that the trigger finger problem has "returned." These statements raise questions about whether Ms. Wirfs' statements relate to the earlier 2-year period now at issue. Second, Ms. Wirfs did not state that plaintiff had any specific work limitations. It is thus unclear whether her statements are even incompatible with the ALJ's finding that plaintiff could work with certain hand limitations. Third, plaintiff's counsel did not explicitly raise this specific line of argument with Dr. Munoz at the hearing. This suggests that, at least at that time, counsel did not view this argument as one of her stronger ones. *See Skinner v. Astrue,* 478 F.3d 836, 842 (7th Cir. 2007) ("a claimant represented by counsel is presumed to have made his best case before the ALJ").

Fourth, and most importantly, Dr. Munoz discussed plaintiff's hand problems and offered several reasons for why he chose include the limitation he did (only frequent handling) but did not include a more severe restriction (such as occasional handling, which is what plaintiff seems to be arguing for now). On the issue of trigger fingers, Dr. Munoz noted that this problem was "on and off" and that such problems "usually are temporary." R. 93. On cross-examination, plaintiff's counsel asked again about this issue, and Dr. Munoz stated that "trigger finger by definition is a temporary condition unless it doesn't resolve" and that there were no statements that plaintiff's condition was severe. R. 109-110; *see also* R. 111 ("Trigger finger is a very fancy

6

name for tendonitis. And tendonitis by definition is an impairment that should last one year."). As for the carpal tunnel syndrome, Dr. Munoz stated that it was mild and that this was why he included a restriction only to the level of frequent handling. R. 110. It is true that the ALJ did not explicitly summarize all of Dr. Munoz's statements in the written decision, but the ALJ clearly was relying on his testimony to support the RFC finding.[2]

**Headaches.** Plaintiff argues that the ALJ failed to consider the "whole record" in evaluating her claim that her headaches (or migraines) were frequent and severe. But plaintiff raises only one argument, which is that the ALJ improperly relied on the fact that plaintiff drove three times per week (17 miles each way).

This argument fails because the ALJ's analysis was broader than plaintiff portrays it. The ALJ did rely on plaintiff's driving, but also relied on other activities including that she "could care for herself, walk short distances, use a computer for 30 minutes at time once or twice per day, swim 2-3 days per week," and "garden through July 2014." Dkt. #13 at 8. As the Government notes, the regulations *require* the ALJ to consider these types of activities.

In addition, the ALJ relied on Dr. Munoz's testimony, as well as the fact that plaintiff claimed to have had severe headaches since 1984 but still was able to work over some of that time. Also, both the ALJ and Dr. Munoz stated that plaintiff had only limited treatment for her headaches. *See* R. 94 (Dr. Munoz: "I didn't find anywhere in any place when they said the migraines are untreatable."). Plaintiff's argument ignores these multiple reinforcing reasons.[3]

---

[2] There is a side issue debated in the briefs about one particular statement made by Ms. Wirfs, which the ALJ interpreted as offering support for the ALJ's decision. Plaintiff argues that the ALJ misinterpreted this statement, which plaintiff believes was "not clear" and may have even supported her position. Dkt. #14 at 4-5. The Court need not further describe or attempt to resolve this issue because it finds that the ALJ's interpretation was one reasonable way to interpret what appears to be an ambiguous statement. But even if the ALJ were wrong about this one statement, the Court finds that the ALJ relied on several other rationales, which collectively constitute substantial evidence.

[3] In her reply brief, plaintiff argued that she was able to work even though she had headaches because she was self-employed and worked on the weekends, and that she "lost at least one job due to her headaches." Dkt. #14 at 5.

7

**PTSD.** The last cherrypicking argument concerns the PTSD symptoms. The ALJ included two RFC limitations—simple work and occasional contact with co-workers—to account for these symptoms. The ALJ relied on the written report of consultative examiner Dr. Julie Harris who found that plaintiff had no more than moderate difficulties in concentration, persistence, or pace and that she was capable of occasional contact with coworkers. R. 31.

Plaintiff argues that the ALJ engaged in cherrypicking. This argument is cursory. It consists of the following:

> ALJ Lewin selectively "cherry-picked" the record by citing Dr. Harris's report to support her findings while ignoring treating sources such as John Policarpio, [sic] overall assessment of a claimant's functional limitations.

Dkt. #9 at 7. The Government argues that this argument is "perfunctory and undeveloped" and is therefore waived. Dkt. #13 at 12 (citing *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)). This Court agrees. Once again, plaintiff has not done the basic foundational work of setting forth the relevant facts and then connecting them to the various argument claims. In this instance, the Court is not willing to do this work for plaintiff, which would require some educated guesses about precisely what she is arguing. In her reply brief, plaintiff did not address this argument at all, further confirming the conclusion that it has been forfeited.

## II.  Doctor Playing.

Plaintiff argues that the ALJ improperly drew medical conclusions without relying on a medical opinion. Plaintiff claims that the ALJ cited to "irrelevant facts" and relied on various objective medical findings, such as that plaintiff had "full range of motion at the elbows and the wrists." Dkt. #9 at 8.

---

Because these facts were brought out at the hearing, the ALJ and Dr. Munoz were undoubtedly aware of them. The Court does not find that these mitigating facts were so significant (among other things, they do not completely undermine the ALJ's larger point and the ALJ relied on other rationales) that the ALJ's failure to specifically refer to them is a basis for remanding the case.

But the quick response to this argument is the one we already made—namely, that the ALJ relied heavily on Dr. Munoz's testimony. Dr. Munoz discussed the objective evidence regarding plaintiff's hand limitations, and plaintiff's counsel was allowed to question him and raise doubts about his analysis. His testimony was extensive, covering 27 pages of the transcript. Plaintiff has not argued that Dr. Munoz erred in his reasoning or misconstrued any evidence. The ALJ's analysis was consistent with his testimony.

### III.     Discounting Dr. Chmell's Opinion.

Plaintiff's last argument is that the ALJ should have given controlling weight to the opinion of Dr. Michael Chmell, who opined that plaintiff needs to routinely elevate her knee above waist level. This opinion was obtained after the hearing when plaintiff's counsel sent a letter to Dr. Chmell asking for "clarification" about plaintiff's swelling symptoms. R. 2269. Specifically, counsel wrote out a series of mostly "yes or no" questions in the letter, so that all that Dr. Chmell had to do was circle the answers and, in a few places, fill in short blanks. Relevant to the current arguments, Dr. Chmell indicated that plaintiff had experienced chronic swelling in both knees since 2008 and would have to elevate her knee "above waist level" for some unspecified portion of the work day. Because counsel only obtained this decision after the hearing, Dr. Munoz was not able to comment on it. But at the hearing, Dr. Munoz testified about the general issue. He repeatedly stated that he found no evidence of any "significant swelling" in the medical records, and explained that swelling would have been caused by a "vascular insufficiency," a condition not documented in the medical record. *See* R. 103, 105, 108, 109.

The ALJ did not give Dr. Chmell's opinion controlling weight or, it is fair to say, any weight because there was no evidence of any swelling documented in his treatment records, especially not going all the way back to 2008 as the doctor claimed. R. 34.

9

Here again, plaintiff's argument is thin. As set forth in the opening brief, the entire argument consists of the following: "[the ALJ's] conclusion is erroneous as Dr. Chmell's treating records note that he recommended ice and elevation to reduce swelling on July 22, 2015. The recommendation for ice was reiterated on August 10, 2015." Dkt. #9 at 9 (citations omitted).

The Government responds with multiple counter-arguments. The Government argues that these two instances cited by plaintiff were all after the cut-off date of July 21, 2014. The Government additionally argues that at least one of the swelling references was only 8 days after plaintiff had her total knee arthroplasty operation. The Government next asserts that Dr. Chmell's treatment notes during the relevant 23-month period consistently recorded that plaintiff had "no edema" and "unremarkable leg examinations." Dkt. #13 at 10. To prove this point, the Government provided 18 bullet points documenting each visit where Dr. Chmell found *no* swelling or an unremarkable leg examination. To cap off its argument, the Government cites to an on-point Seventh Circuit case—*Fody v. Colvin*, 641 Fed. Appx. 568 (7th Cir. 2016)—where the Seventh Circuit affirmed an ALJ's decision not to credit a treating physician's opinion that the claimant would have to elevate her legs because of swelling. *Id.* at 572.

The Court finds the above arguments are persuasive. In her reply brief, plaintiff has not challenged the Government's contention that *no* treatment records supported Dr. Chmell's opinion. Plaintiff also did not respond to *Fody*, nor offer any contrary precedent.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied; the government's motion is granted; and the decision of the ALJ is affirmed.

Date: July 3, 2019  By: _____
Iain D. Johnston
United States Magistrate Judge